# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMILE MICHEL, | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| | : | 3:08-CV-1909 (JCH) |
| v. | : | |
| | : | |
| DHL WORLDWIDE EXPRESS, INC., | : | |
| ET AL., | : | JULY 30, 2010 |
| Defendants. | : | |

## RULING RE: MOTION FOR SUMMARY JUDGMENT (Doc. 62)

Plaintiff Emile Michel ("Michel") brings this action against his former employer, DHL Worldwide Express, Inc. ("DHL"), as well as his former union, Local 295, International Brotherhood of Teamsters (hereinafter "the Union"), for damages he allegedly suffered when DHL terminated his employment in September 2008. While Michel's original Complaint (Doc. No. 1) contained eight Counts, most of those were dismissed in this court's October 19, 2009 Ruling (Doc. No. 44) on DHL's Motion to Dismiss. The Amended Complaint, which is the operative complaint for purposes of this Ruling, was filed on February 2, 2010 (Doc. No. 53), and contains three counts. Count One alleges that DHL violated 29 U.S.C. § 2101, et seq., also known as the Worker Adjustment and Retraining Notification Act (hereinafter "WARN Act"). Counts Two and Three allege that the Union breached its duty of fair representation, in connection with Michel's termination from employment.

On June 15, 2010, DHL moved for summary judgment on Count One (Doc. No. 62). For the reasons that follow, that Motion is granted.

## II.    STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.' " Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere " 'scintilla' " of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

## III.  FACTUAL BACKGROUND[1]

For approximately eleven years prior September 25, 2008, Michel was employed as a delivery driver for DHL, a package delivery company.  L.R. 56(a)(1) at ¶ 1.  For all but the last three days of his employment, Michel was based in DHL's Norwalk, Connecticut facility.  Id.  As a DHL employee, Michel was a member of Local 295.  Id. at ¶ 3.  As such, his employment was governed by the terms of a collective bargaining agreement.  Id.  Pursuant to the terms of that agreement, Michel worked a regular schedule of 40 hours per week.  Id. at ¶ 6.

On September 9, 2008, DHL notified the Union that it "planned to downsize its operations in the Norwalk facility."  Id. at ¶ 4.  Soon thereafter, Michel was "given the choice of either accepting a part-time position in the Norwalk facility or bidding on a full-time position in another facility."  Id. at ¶ 5.  While the part-time position in Norwalk would have guaranteed Michel a minimum of 25 hours of work per week, Michel chose to bid on a full-time delivery driver position based in DHL's Danbury, Connecticut facility.  Id. at ¶¶ 7, 8.  Michel's bid was accepted.  Id. at ¶ 9.   His last day of work in

---

[1] As in any ruling on a motion for summary judgment, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving party, where there is evidence to support that party's allegations.

The court notes, however, that Michel has failed to comply with the provision of Local Rule of Civil Procedure 56, which provides that a party opposing a motion for summary judgment must submit a "Local Rule 56(a)2 Statement . . . which states in separately numbered paragraphs . . . and corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied."  Michel has provided a statement of disputed issues of material fact (inaccurately labeled as a "Local Rule 56(a)1 Statement"), but has not specifically admitted or denied any of the allegations contained in DHL's Local Rule 56(a)1 Statement.  It also bears noting that many assertions contained in Michel's statement of disputed issues of material fact (hereinafter "Local Rule 56(a)2 Statement" or "L.R. 56(a)(2)") lack the required "specific citation[s]" to the record.  L.R. 56(a)(3).

In accordance with the Local Rules, the court will "deem admitted" the facts contained in DHL's Local Rule 56(a)1 Statement, to the extent such Statement is not controverted by the portions of the Local Rule 56(a)2 Statement that do contain specific citations to the record.  L.R. 56(a)(1).

Norwalk was Friday, September 19, 2008.  Id. at ¶ 10.

On September 22, 2008, Michel began working out of DHL's Danbury facility.  Id. at ¶ 10.  For two days, "he successfully completed routes that were unfamiliar to him . . . by following a map that his supervisor gave him."  Id. at ¶ 11.  On his third day, September 24, 2008, he failed to deliver 27 out of 35 packages assigned to him and also failed to retrieve two packages that he was supposed to pick up from DHL customers.  Id. at ¶ 22.  Michel did not tell DHL where he was until late that afternoon, despite knowing that it was "his responsibility to maintain contact with [DHL] dispatch."  Id. at ¶¶ 28, 34.  While Michel claims he was lost during that period, he neither contacted DHL to explain his predicament, nor "stop[ped] at any gas stations or other businesses to ask for directions."  Id. at ¶¶ 31-34.

The following day, September 25, 2008, DHL terminated Michel's employment.  Id. at ¶ 36.  Michel then filed a grievance with the Union, which it pursued until the "Step 3" level.  Id. at ¶ 37-38.  The Union, however, agreeing "that the termination should be upheld," declined to pursue the grievance to arbitration.  Id. at ¶ 38.

## IV.    DISCUSSION

Count One of the Amended Complaint, which is the only claim remaining in this lawsuit against DHL, alleges that DHL violated the WARN Act, 29 U.S.C. § 2101 et seq.  Under the WARN Act, employers generally may not "order a plant closing or mass layoff" unless "affected employees" receive 60 days' notice.  See 29 U.S.C. § 2102(a)(1).  "[T]he term 'plant closing' means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of

employment during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2). "[T]he term 'mass layoff' means a reduction in force which– (A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30-day period for– (i)(I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees)." 29 U.S.C. § 2101(a)(3). The WARN Act provides for a private right of action. 29 U.S.C. § 2104(a)(1), (5).

It is not clear whether Michel is alleging a "plant closing" or "mass layoff." In either case, however, by the plain terms of the statute, Michel would need to establish that "(1) 50 employees, not including part-time employees,[2] (2) at a single site of employment, (3) suffered an employment loss." Johnson v. Telespectrum Worldwide, Inc., 29 Fed. Appx. 76, 77 (3d Cir. 2002). Michel would also have to show that such employment losses took place during a particular 30-day period.

In his Memorandum in Opposition to DHL's Motion for Summary Judgment, Michel's only references to plant closings and/or mass layoffs are his assertions that (a) "Michel's termination by DHL and the announcement of its decision to discontinue its domestic (U.S.) operations and services, and closure of numerous facilities all were happening contemporaneously;" and (b) "DHL announced, in November, 2008 . . . that it was eliminating 9,500 employees in the U.S. out of its total of approximately 13,000

---

[2] "[T]he term 'part-time employee' means an employee who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8).

domestic employees at the time." Mem. in Opp. at 4. In support of these assertions, Michel cites two emails, which appear to have been sent in December 2008, stating, in relevant part, that "DHL's U.S. domestic-only service ends soon," and "DHL's U.S. domestic-only service is ending." Pl's Exh. C. Michel also cites an undated newspaper article that discusses DHL plant closures. Id.

However, there is simply nothing in the record indicating that 50 or more DHL employees, at either the Danbury or Norwalk facility, suffered an employment loss during any 30-day period. The fact that DHL may have announced in November 2008 that it was discontinuing domestic services, and that DHL may have planned to lay off 9,500 employees out of a total of 13,000 nationwide, even if true, do not bear on whether a "plant closing" or "mass layoffs" occurred at one or both of the Connecticut facilities in which Michel was employed during his tenure with DHL. The undated newspaper article cited by Michel nowhere mentions mass layoffs or plant closings in either Danbury or Norwalk. Pl's Exh. C. To the contrary, that article quotes a DHL spokesperson in stating that "DHL's Norwalk operation . . . will stay open" and does not contain any mention of the Danbury facility. Id.

Perhaps more importantly, the evidence DHL cites--which is nowhere contradicted by the evidence Michel cites--clearly and unambiguously indicates that, between June 21, 2008, and December 24, 2008, fewer than five full time employees at each of those sites suffered "employment losses" within the meaning of the WARN

Act.[3]  See Def's Exh. C at ¶¶ 7, 8.  Indeed, from June 21, 2008 (90 days before Michel was transferred to the Danbury facility), until December 24, 2008 (90 days after he was fired), "fewer than five full-time employees based at the Norwalk facility were involuntarily terminated fo reasons other than for cause, laid off for a period exceeding 6 months, or had their hours of work reduce by more than 50 percent."  L.R. 56(a)(1) at ¶ 42.  During that same span of time, "fewer than five full-time employees based at the Danbury facility were involuntarily terminated fo reasons other than for cause, laid off for a period exceeding 6 months, or had their hours of work reduce by more than 50 percent."  Id. at ¶ 43.  Because there is no evidence from which any reasonable jury could find that 50 or more workers suffered an employment loss at either the Danbury or Norwalk facility, summary judgment must be granted to DHL on Michel's WARN Act claim.

## V.    CONCLUSION

For the foregoing reasons, defendant DHL's Motion for Summary Judgment (Doc. No. 62) is **GRANTED**.

---

[3] "[T]he term "employment loss" means (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period."  29 U.S.C. § 2101(a)(6).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 30th day of July, 2010.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge