UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMILE MICHEL, | : | |
|     Plaintiff | : | CIVIL ACTION NO. |
| | : | 3:08-CV-1909 (JCH) |
| v. | : | |
| | : | |
| DHL WORLDWIDE EXPRESS, INC., | : | |
| ET AL., | : | JULY 30, 2010 |
|     Defendants. | | |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (Doc. 65)**

Plaintiff Emile Michel ("Michel") brings this action against his former employer, DHL Worldwide Express, Inc. ("DHL"), as well as his former union, Local 295, International Brotherhood of Teamsters (hereinafter "Local 295" or "the Union"), for damages he allegedly suffered when DHL terminated his employment in September 2008. While Michel's original Complaint (Doc. No. 1) contained eight Counts, most of those were dismissed in this court's October 19, 2009 Ruling (Doc. No. 44) on DHL's Motion to Dismiss. The Amended Complaint, which is the operative complaint for purposes of this Ruling, was filed on February 2, 2010 (Doc. No. 53), and contains three counts. Count One alleges that DHL violated 29 U.S.C. § 2101, et seq., also known as the Worker Adjustment and Retraining Notification Act (hereinafter "WARN Act"). Counts Two and Three allege that the Union breached its duty of fair representation in connection with Michel's termination from employment.

The Union moved for summary judgment as to Counts Two and Three on June 15, 2010. For the reasons that follow, that Motion (Doc. No. 65) is granted.

## II. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.' " Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere " 'scintilla' " of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

## III.    FACTUAL BACKGROUND[1]

Prior to the termination of his employment, Michel had worked for eleven years as a courier for DHL, a package-delivery company. L.R. 56(a)(1) at ¶ 5. As a DHL courier, Michel was a member of Local 295, and his employment was governed by the terms of a collective bargaining agreement ("CBA"). L.R. 56(a)(1) at ¶¶ 1, 2. Michel was terminated from his position after he failed to deliver 27 out of 35 packages on September 24, 2008, and failed to contact DHL to explain that he was lost on the road. Id. at 8-14.

The CBA "contains a section concerning the resolution of grievances that provides any grievances not settled by the parties may be submitted to binding arbitration."[2] Id. at ¶ 3. After he was fired, Michel filed a grievance with the Union against DHL, which was handled by Union shop steward Jack Horta and Patrick Scheer ("Scheer"), who is the Union's vice president and a member of its executive board. Id. at ¶ 7. The Union represented Michel during the grievance process; specifically, it

---

[1] As in any ruling on a motion for summary judgment, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving party, where there is evidence to support that party's allegations.
   The court notes, however, that Michel has failed to comply with the provision of Local Rule of Civil Procedure 56, which provides that a party opposing a motion for summary judgment must submit a "Local Rule 56(a)2 Statement . . . which states in separately numbered paragraphs . . . and corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied." Michel has provided a statement of disputed issues of material fact (inaccurately labeled as a "Local Rule 56(a)1 Statement"), but has not specifically admitted or denied any of the allegations contained in the Union's Local Rule 56(a)1 Statement. It also bears noting that Michel's statement of disputed issues of material fact (hereinafter "Local Rule 56(a)2 Statement" or "L.R. 56(a)(2)") lacks the required "specific citation[s]" to the record. L.R. 56(a)(3).
   In accordance with the Local Rules, the court will "deem admitted" the Union's Local Rule 56(a)1 Statement, to the extent such Statement is not controverted by the portions of the Local Rule 56(a)2 Statement that do contain specific citations to the record. L.R. 56(a)(1).

[2] This particular portion of the CBA states, in part: "If the grievance is not satisfactorily adjusted in Step 3, the Union may submit the grievance to the Impartial Chairman, hereinafter designated, for binding and final resolution." See CBA at 64.

3

"grieved Michel's termination and took it as far as a Step III hearing." Id. at ¶ 16. Ultimately, however, DHL denied Michel's grievance. Id. at ¶ 17. After Scheer evaluated the merits of that grievance and decided that DHL would be likely to prevail at arbitration, the Union's executive board decided not to take Michel's grievance to arbitration. Id. at ¶ 18, 19. Later, Michel filed another grievance with his union, alleging a violation of the WARN Act. Id. at ¶ 22.

## IV. DISCUSSION

Counts Two and Three both allege that Local 295 breached its duty of fair representation to Michel. Count Two alleges that the Union breached its duty to fairly represent Michel when it "failed to make DHL comply with its obligations under the progressive discipline provisions of the applicable collective bargaining agreement grievance procedure," failed to adequately represent Michel as to a grievance filed by Michel against DHL, and refused to take Michel's grievance to arbitration. Am. Comp. at ¶ 16. Count Three alleges that the Union failed to represent Michel by failing to secure him entitlements under the WARN Act and "allow[ing]" DHL to violate the WARN Act. Id. at ¶ 19. The court herein addresses both Counts.

A union "has a duty to represent fairly all employees subject to the collective bargaining agreement." Vaughn v. Air Line Pilots Ass'n, Intern., 604 F.3d 703, 709 (2d Cir. 2010) (internal quotation marks and citations omitted). To establish a claim for a breach of the duty of fair representation, a plaintiff must satisfy a two-part standard. First, the plaintiff must "prove that the union's actions or inactions [we]re either arbitrary, discriminatory, or in bad faith." Id. (internal quotation marks and citations omitted). Second, the plaintiff must "demonstrate a causal connection between the union's

4

wrongful conduct and [his] injuries." Id. (internal quotation marks and citations omitted).

Local 295 argues that its representation of Michel following his termination from his position with DHL was not arbitrary, discriminatory, or in bad faith.[3] "A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.' " Id. (quoting Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 67 (1991). Indeed, a plaintiff cannot rely on evidence of "tactical errors" or negligence committed by the union, in order to prevail on a claim for breach of the duty of fair representation. Vaughn, 603 F.3d at 709. "A union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.' " Id. (quoting Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge, 403 U.S. 274, 301 (1971)). "Bad faith, which encompasses fraud, dishonesty, and other intentionally misleading conduct, requires proof that the union acted with an improper intent, purpose, or motive." Id. (internal quotation marks and citations omitted).

A.  Count Two

Michel's Memorandum in Opposition appears to indicate that the claim contained in Count Two is based on the following facts:[4] (a) that Patrick Schneer "did not know

---

[3] The Union also argues that summary judgment should be granted because Michel failed to exhaust his "internal union remedies." Mem. in Supp. at 7. Because the court grants summary judgment on the basis that the record lacks evidence that on which a reasonable jury could find that the Union breached its duty of fair representation, the court does not address this exhaustion argument.

[4] Michel's Memorandum in Opposition to the Union's Motion for Summary Judgment only cursorily applies the applicable law to the facts of this case. The Memorandum provides the court with a facts section that lacks any citations to the record, and approximately one double-spaced page of argument, also lacking in citations to the record.

5

that Michel's scanner was defective and that Michel had advised DHL management of that fact for three days," prior to his termination with DHL. Mem. in Opp. at 5; (b) that the Union did not take Michel's grievance against DHL to arbitration; (c) that Scheer "screamed at Michel during meetings in an attempt to convince Michel to drop his grievance," id. at 4; and (d) that these events coincided with DHL's announcement of "its decision to discontinue its domestic . . . operations and services, and closure of numerous facilities." Id. at 5

Even construing all of these facts in Michel's favor, no reasonable jury could find the Union liable on Count Two. First, and perhaps most importantly, Michel's claim that he had a right to have the Union take his claim to arbitration is without merit. While the Union represented Michel through Step III of the grievance process, there is no evidence in the record indicating that its refusal to take the claim to arbitration was in any way arbitrary, discriminatory, or in bad faith. To the contrary, the record shows that, after Michel filed his grievance, Schneer investigated the factual circumstances surrounding Michel's termination from the company, and concluded that "DHL had a very strong case against Mr. Michel." Declaration of Patrick Schneer at ¶ 10. Schneer discovered that there were "large gaps of time between deliveries" that Michel was supposed to make, id. at ¶ 8, asked Michel if he had any explanations for such gaps, and concluded that "Michel had no answers to justify [him] taking [the grievance] to arbitration." Deposition of Patrick Schneer at 11:9-25 ("Schneer Dep."). The mere fact that the Union did not take Michel's claim to arbitration in no way compels the conclusion that the Union acted in an arbitrary or discriminatory manner, or in bad faith, especially given the fact that all of the evidence in this case shows that Schneer did

6

investigate Michel's claim and make an evaluation, based on his own experience.[5]  See L.R. 56(a)(1) at ¶ 18 ("Schneer evaluated the merits of the grievance . . . and determined that Local 295 would be unlikely to prevail if the grievance were taken to arbitration.").  Indeed, even if Michel's grievance was meritorious, he would have "no absolute right to have it either litigated or arbitrated" by his Union.  Vaca v. Sipes, 386 U.S. 171, 195 (1967).  As the Supreme Court has held, "the union typically has broad discretion in its decision whether and how to pursue an employee's grievance against an employer."[6]  Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567-68 (1990).

Further, the fact that Schneer may not have known that Michel had a defective scanner during the three days prior to his termination does not lead to the conclusion that the Union breached its duty of fair representation.  As Schneer testified during his deposition, Michel never informed the Union that his scanner was defective.  Schneer Dep. at 12:3-6.  Moreover, Schneer's investigation into Michel's grievance led him to the conclusion that the scanner was not actually broken during that period, because it had recorded certain "activities" over the three days.  Id. at 12:7-10.  Even if the Union lacked accurate knowledge about whether Michel's scanner was operative, there is

---

[5] Moreover, Local 295 has not since 1995 taken a "theft of time" case to arbitration, and Michel himself admitted "that a reasonable person could have concluded that he would not have won his arbitration." L.R. 56(a)(1) at ¶¶ 20, 21.

[6] The fact that the Union's refusal to take Michel's grievance to arbitration may have coincided with DHL's announcement of "its decision to discontinue its domestic . . . operations and services, and closure of numerous facilities," Mem. in Opp. at 5, in no way impacts this court's conclusion that such refusal was not arbitrary, discriminatory, or in bad faith. As noted above, the uncontroverted evidence shows that Schneer independently evaluated Michel's chances of prevailing at arbitration. There is no suggestion in the record that such evaluation took into account DHL's contemporaneous business decisions.

7

nothing in the record to indicate that the Union's alleged lack of knowledge was the result of action or inaction that was arbitrary, discriminatory, or in bad faith.

As to the allegation that Schneer screamed at Michel to get him to drop his grievance, neither Michel's Memorandum in Opposition nor his Local Rule 56(a)(2) statement provides a specific citation to any evidence in the record supporting that allegation. Moreover, even if Schneer screamed at Michel and told him to drop his grievance, that fact does not lead to the conclusion that Schneer was acting in a manner that was arbitrary, discriminatory, or in bad faith.

For the foregoing reasons, the court concludes that no reasonable jury could find for Michel on Count Two. Summary judgment is therefore granted on that Count.

B.  Count Three

As to Count Three, Michel's Memorandum in Opposition contains little information about his claim that the Union breached its duty of fair representation by failing to secure him benefits under the WARN Act. Indeed, the record of devoid of evidence--and Michel has cited none--indicating that the Union either had any duty to secure Michel benefits under the WARN Act, or somehow "allowed" DHL to violate the WARN Act. Further, Michel has submitted no evidence that DHL violated the WARN Act in the first place. Indeed, this court has already issued a Ruling granting summary judgment to DHL on Count one of the Amended Complaint, on this basis. Summary judgment is therefore granted on Count Three.

**V.    CONCLUSION**

For the foregoing reasons, Local 295's Motion for Summary Judgment (Doc. No. 65) is granted.

8

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 30th day of July, 2010.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge